**Sammie KELLEY, Jr.,
Plaintiff–Appellant,**

v.

**Kenneth McGINNIS, Director for the Department of Corrections,\* James H. Thieret, Sandra McDonough, Alan L. Frentzel, Michael W. Frazer, Jerry Bradley, Gary D. Slutz, Beverly Clark, Ronald M. Shansky, M.D., Jim Greer, Michael W. Carter, Eric Daly, and L.V. Lipe, Defendants–Appellees.**

No. 88–3170.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 28, 1989.\*\*

Decided April 5, 1990.

---

\* Mr. McGinnis has been substituted for his predecessor, Mr. Lane, pursuant to Fed.R.App.P. 43.

\*\* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice

Sammie Kelley, Jr., pro se.

William D. Frazier, Asst. Atty. Gen., Chicago, Ill., Charles S. Watson, Asst. Atty. Gen., Crim. Appeals Div., Springfield, Ill., for defendants-appellees.

Before WOOD, Jr., CUDAHY, and RIPPLE, Circuit Judges.

provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R. App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs.

PER CURIAM.

Sammie Kelley, Jr., a state prisoner proceeding *pro se*, appeals from the district court's entry of summary judgment for defendants in his 42 U.S.C. § 1983 action. For the reasons stated below, we reverse and remand.

I.

In his complaint, Kelley alleges that since July 1984 he has suffered from chronic foot problems and that defendants, state prison officials and Menard prison administrators, have refused to provide him with adequate medical treatment. Kelley alleges that defendants have thereby unnecessarily inflicted cruel and unusual punishment on him in violation of the Eighth Amendment.[1] Kelley began writing letters in March 1987 in an attempt to force the prison clinic to respond to his medical needs. This effort was unsuccessful. He also filed two internal grievances, but these were both rejected.

On June 30, 1987, Kelley filed suit in federal district court. The case was referred to Magistrate Gerald Cohn for pretrial proceedings. Over the next several months various defendants filed motions to dismiss Kelley's complaint under Fed.R. Civ.P. 12(b)(6). Kelley filed opposing memoranda. On February 19, 1988, Magistrate Cohn held a hearing on the defendants' motions. The court continued the matter for thirty days and ordered the defendants to arrange for a medical examination of Kelley's feet. Defendants subsequently had Kelley's feet examined on February 29, 1988, by Dr. Milton Zemlyn, a physician at the Menard clinic; defendants filed the doctor's affidavit and Kelley's medical records with the court on March 8, 1988.[2] Kelley was not sent a copy of Zemlyn's affidavit.

On July 27, 1988, Magistrate Cohn issued his Report and Recommendation. In it, he wrote that since defendants filed "an affidavit and medical records ... with the court on March 8, 1988, these motions [to dismiss] will be construed as motions for summary judgment pursuant to Fed.R. Civ.P. 56." Contrary to the rule we established in *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), notice to this effect was not sent to Kelley.[3]

Kelley filed objections to the magistrate's report with the district court. He argued that because he had not been given notice of the court's conversion of the defendants' motions to dismiss into motions for summary judgment, he was prejudiced by not being provided the opportunity to offer "other evidence contradicting the said affidavit of Dr. Milton Zemlyn." Kelley claims in his reply brief to this court that the "other evidence" is based on a medical examination conducted by an outside doctor. He claims that "[t]he record will reflect that plaintiff also was given a complete foot examination by an outside physician, in the state of ... Missouri on two separate occasions while incarcerated at the Menard Correctional Center, after the District Court Order was given which required a foot examination for plaintiff."[4]

1. In addition to experiencing "severe" pain, plaintiff's medical problem causes "severe and constant daily itching," "accumulation of callous build-up," "accumulation of sores, pus, swelling on both feet," and "loss of right arch."

2. Dr. Zemlyn stated that "[s]ince his arrival at Menard Correctional Center, [Kelley] has had long and frequent usage of the medical facilities to alleviate his problems." Dr. Zemlyn's diagnosis of Kelley was that he had "decidedly flat and moderately pronated feet," "one centimeter ... callouses on the plantar aspect of each foot," "a residual of dermatophytosis with peeling of portions of his inner digital skin and thickening of the skin along the plantar border of each foot," and "no acute lesions." He also stated that Kelley recently had been fitted for "custom splints" and had been provided with "adequate medication" to relieve the itching Kelley complained of.

3. Magistrate Cohn recommended that the district court grant summary judgment in favor of defendants on the ground that Kelley was merely disagreeing with the medical treatment he received and that his claim did not involve a federal constitutional violation but rather a state medical malpractice action.

4. We are unable to verify Kelley's claim on the record before us. The medical records filed by the defendants in the district court only include documents and entries until September 1987. The magistrate ordered the foot examination in February 1988 and Kelley claims that the two outside examinations occurred after that time.

Kelley alleges that the outside doctor's diagnosis contradicts Zemlyn's affidavit, and Kelley implies that the state did not mention these examinations because they support his claim of deliberate indifference.

On October 20, 1988, Judge William Beatty entered summary judgment for the defendants over Kelley's protests. Because Kelley filed objections, Judge Beatty conducted a *de novo* review of the magistrate's report pursuant to 28 U.S.C. § 636(b)(1). Despite Kelley's clear objections regarding receiving proper notice and his claim that he could provide contradictory evidence if given the opportunity, the district court failed to address the issue. In its order, the court simply held that under *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), Kelley's complaint amounted to nothing more than a disagreement with medical personnel over proper treatment and did not establish deliberate indifference toward his serious medical needs.[5]

## II.

On appeal, Kelley argues that the magistrate's failure to notify him of the transformation of the defendants' 12(b)(6) motions into motions for summary judgment is ground for reversal. In *Lewis v. Faulkner*, 689 F.2d 100, 101 (7th Cir.1982), we established that "a district court cannot properly act on a motion for summary judgment without giving the [*pro se*] opposing party a reasonable opportunity to submit affidavits that contradict the affidavits submitted in support of the motion and demonstrate that there is a genuine issue of material fact which precludes granting the defendants summary judgment."[6] In *Lewis*, we remanded the case because the district court failed to give the *pro se* prisoner either notice of the effect of the defendant's motion for summary judgment or

a reasonable opportunity to file counteraffidavits to the defendant's motion. *Id.* at 102. After *Lewis*, the "notice rule" was accepted as the law of this circuit. *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985); *see also Quinlan v. Fairman*, 663 F.Supp. 24, 25 n. 2 (N.D.Ill.1987) (noting compliance with *Lewis*); *Burris v. Kirkpatrick*, 573 F.Supp. 1084, 1084 n. 1 (N.D. Ind.1983) (same); *Guffey v. Trapp*, 572 F.Supp. 782, 782–83 (N.D.Ind.1983) (same).

In the case before us, the magistrate failed to give Kelley notice or a reasonable opportunity to file counter-affidavits. Kelley raised an objection to this omission, but the district court did not extend to Kelley an opportunity to file counteraffidavits before entering summary judgment against him. Instead, the district court, relying in part on Dr. Zemlyn's affidavit, adopted the magistrate's recommendation. These actions were contrary to our rule in *Lewis*.

In *Lewis* we based our remand to the district court solely on the basis of the district court's procedure in disposing of the case. We did not review the complaint to determine whether plaintiff stated a claim for relief. In *Ross v. Franzen, supra*, however, we suggested in dicta that we might not remand a case where "it appears 'beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 777 F.2d at 1219 (quoting *Muhammad v. Rowe*, 638 F.2d 693, 695–96 (7th Cir.1981)). Given the allegations of Ross's complaint, we could not conclude that there was no set of facts entitling him to relief, and we therefore remanded to the district court because proper notice had not been given.

▪▪▪ Kelley's complaint likewise alleges facts sufficient to prevail below under the Eighth Amendment if he can substanti-

---

**5.** Magistrate Cohn felt that Kelley's claim met the "serious medical need" prong of the *Estelle* analysis but failed the deliberate indifference prong: "This Court does not suggest that the medical need here was not serious; but the deliberate indifference standard encompasses only 'wanton infliction of unnecessary pain' and not accident or inadvertence." Report and Recommendation at 2. The district court did not

dispute this characterization and defendants do not raise the issue on appeal. We therefore assume for purposes of this appeal that Kelley's medical need was serious.

**6.** This rule applies, of course, to magistrates as well as district court judges. *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir.1985).

ate his claims.[7] In analyzing this question, we apply the recognized *pro se* standards to Kelley's complaint.[8] To state a claim for relief under the Eighth Amendment, Kelley must show that prison officials were deliberately indifferent to his serious medical needs. *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291. Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05, 97 S.Ct. at 291 (citations omitted). Of course, "[t]his ... does not mean ... that every claim by a prisoner that he has not received adequate medical treatment states a claim under the Eighth Amendment." *Id.* at 105, 97 S.Ct. at 291. Negligence alone, or simple medical malpractice, is insufficient to state a claim for relief. *Id.* at 106, 97 S.Ct. at 292.

■ Kelley's complaint covers a variety of factual scenarios that, if proven, could provide Kelley relief. For example, he alleges that the personnel at the clinic intentionally refused to let him see a doctor about his foot problems; he alleges that non-medical personnel at the clinic repeatedly denied him access to a doctor and simply gave him ineffective foot treatments and sent him on his way. After repeated requests to see a doctor, he alleges that a doctor gave him a cursory examination and prescribed the same treatment that failed earlier to work. He claims that this action was intentional and that prison administrators to whom he complained "toyed" with him and intentionally aggravated his medical condition. Dr. Zemlyn's affidavit supports Kelley's assertion that he has suffered from his foot condition for years.[9] Kelley may recover if he can prove that the clinic personnel deliberately gave him a certain kind of treatment knowing that it was ineffective, either as a means of toying with him or as a way of choosing "the 'easier and less efficacious treatment.'" *Estelle*, 429 U.S. at 104 n. 10, 97 S.Ct. at 291 n. 10 (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir.1974)).

■ A second potential theory of recovery is that the prison clinic's repeated, long-term negligent treatment of his medical condition, rather than its intentional actions, amounts to deliberate indifference to Kelley's serious medical needs. Kelley argues that we can infer deliberate indifference because he has received three years of ineffective treatment. The defendants argue that this theory can never meet the *Estelle* standard of deliberate indifference, and that Kelley therefore fails to state a claim for relief. By definition, the defendants contend, "[w]here a prisoner's challenge focuses upon the quality and the source of the medical treatment received ... such a claim ... constitutes at most a State claim of negligence." *See, e.g., Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976) (when prisoners receive

---

7. Kelley argues that his complaint states a claim because he was granted leave to proceed *in forma pauperis*. In granting Kelley's *IFP* petition, District Judge William Stiehl held that "plaintiff has alleged acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Kelley cites this language and argues that his complaint therefore clearly states a claim for relief. The standard applied to an *IFP* motion, however, is not as rigorous as that applied to the *pro se* complaint itself. *Neitzke v. Williams*, —— U.S. ——, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). Therefore, Kelley could be entitled to proceed *IFP* but still fail to state a cognizable claim for relief.

8. A *pro se* prisoner's complaint is to be liberally construed; an uncounseled "plaintiff is 'entitled to an opportunity to offer proof' unless it ap-

pears 'beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Muhammad v. Rowe*, 638 F.2d 693, 695 (7th Cir.1981) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972)). The question is thus whether Kelley's complaint, liberally construed, establishes that there exists a set of facts upon which relief might be granted. *Ross*, 777 F.2d at 1220. In evaluating this question, of course, we accept plaintiff's allegations as true. *Estelle*, 429 U.S. at 99, 97 S.Ct. at 288.

9. Dr. Zemlyn states that Kelley had received "long and frequent usage of the medical facilities to alleviate his problems"; he does not offer an opinion, however, on why Kelley's problems were never, in fact, alleviated after this extensive access to medical care.

"some" treatment, federal courts are reluctant to offer relief).

We have yet to rule definitively on the validity of this theory of recovery under the Eighth Amendment. In *Wellman v. Faulker*, 715 F.2d 269 (7th Cir.1983), *cert. denied*, 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984), we held that, at least in the context of a class action, " 'repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff' " can sufficiently evidence deliberate indifference. *Id.* at 272 (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)). In *Wellman*, we held that the pattern was established by evidence that the prison employed non-English-speaking doctors, failed to provide adequate psychiatric care and failed to keep sufficient medical supplies on hand. 715 F.2d at 272–74.

In *Benson v. Cady*, 761 F.2d 335 (7th Cir.1985), the court applied *Wellman*. A dissenting judge, however, stated that we failed properly to apply *Wellman*'s "repeated ... negligent acts" test. In *Benson*, the prisoner alleged that he was negligently injured by defendants, failed to receive proper treatment after waiting two days to see a doctor, was given a psychiatric drug instead of a pain killer and was subjected to injury-aggravating conditions. Since that plaintiff was represented by counsel, we did not invoke the *pro se* protections of *Haines v. Kerner.* We concluded that the plaintiff's allegations were all claims of negligence and we held, at least implicitly given the dissent, that plaintiff's allegations did not describe repeated acts of negligence sufficient to disclose a pattern evidencing deliberate indifference. We did not foreclose later plaintiffs from proceeding under a repeated negligent acts theory. We held only that, under 12(b)(6), the plaintiff had failed to state an Eighth Amendment claim.

Applied to the case before us, these standards do not foreclose relief under a repeated acts theory, at least at this stage. First, Kelley is proceeding *pro se* and his complaint is therefore treated more liberally under *Haines.* Also, Kelley alleges that the defendants were repeatedly negligent

in their treatment of his condition for a three-year period, while the plaintiff in *Benson* alleged negligent actions that primarily occurred soon after or within several months of his injury. The facts alleged in Kelley's complaint are sufficiently distinguishable from those in *Benson* for Kelley to argue, and possibly prevail on, a theory of repeated negligent acts.

■ Whether Kelley can prevail on his Eighth Amendment claim under the facts he has alleged will depend on his ability to adduce evidence either to counter a properly filed and noticed motion for summary judgment or to prove his case should it proceed to trial. These questions of fact will be properly addressed by the district court on remand, rather than by this court on appeal. Although the issue appears to be close, we cannot say at this stage that Kelley can prove no set of facts entitling him to relief.

### III.

Summary judgment was inappropriately entered below. Kelley, proceeding *pro se*, was not given proper notice of the court's conversion of the defendants' motions to dismiss into motions for summary judgment. We therefore REVERSE and REMAND to the district court for further proceedings in accordance with this opinion.