Marc Andrew RAINES, Plaintiff–
Appellant,

v.

INDIANAPOLIS PUBLIC SCHOOLS,
Board of School Commissioners, Ma-
rianna Zaphiriou, Michael Brown, et
al., Defendants–Appellees.

Nos. 02–2121, 02–2206.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 21, 2002.*

Decided Nov. 26, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before BAUER, POSNER, and DIANE P. WOOD, Circuit Judges.

ORDER

Marc Raines filed this action *pro se,* challenging the termination of his teaching contract with the Indianapolis Public Schools (IPS). Between September 1998 and June 1999, Raines was arrested on three separate occasions on numerous felony and misdemeanor charges and was incarcerated altogether for approximately six months. When the IPS Board terminated his contract because of his legal problems, Raines was in the Marion County Jail. Raines filed suit in district court against the members of the IPS Board and their legal counsel, alleging that the Board had discriminated against him based on his Native American ancestry, denied him due process, and acted contrary to Indiana contract law. The district court granted summary judgment for the defendants, and Raines appeals. We affirm.

I. Background

Raines began teaching science at Arsenal Technical High School in Indianapolis in the fall of 1997. IPS had no complaints about Raines' job performance until he failed to show up for the second day of summer school in June 1998, and was removed from his summer school assignment. He returned to teach for the 1998–1999 school year. But on September 11, 1998, Raines assaulted his girlfriend and was arrested for criminal recklessness, battery, aggravated battery, and criminal confinement; IPS placed him on paid suspension pending an investigation of the incident. Raines remained on paid suspension and received full salary and benefits for the remainder of the school year, even though he never returned to the classroom.

On September 24, Raines was placed under a no-contact order, which he violated in March 1999 when he again beat his girlfriend. This incident led to a second battery charge, and Raines remained in jail from March 2, 1999, to June 3, 1999. On June 1 Raines pleaded guilty to two counts of battery and was sentenced to a year in jail including time served. The remainder of the sentence was suspended.

In the days following his release from jail, Raines repeatedly violated the no-contact order by rummaging through his girlfriend's belongings while she was away from home, calling her, and showing up at her place of employment. On June 11, Raines was arrested on four counts of invasion of privacy and held in jail on $50,000 bail. Because he could not pay the

bail, Raines was forced to remain in jail until his trial on September 21, 1999.

Raines was removed from paid suspension at the end of summer 1999 and notified by letter on August 25 that he was expected to return to work the following day. The letter stated that IPS would not pay Raines for any day that he could not attend work because he was incarcerated. On August 26, however, Raines was still in jail awaiting trial and thus did not go to work, and Superintendent Duncan Pritchett notified him that the IPS Board would consider terminating his contract at its next meeting on September 28. Pritchett informed Raines that he had a right to a hearing, and a hearing would be scheduled for September 20 if he wanted to exercise that right. Noting that his trial was set for September 21, Raines requested that the hearing date be moved. Scott Tarter, counsel for the IPS Board, responded by letter that the Board had rescheduled the hearing for September 24.

Raines, however, was found guilty at his trial and sentenced to 180 days in jail; thus, he was still incarcerated on September 24. Raines wrote to the IPS Board that his case was under post-conviction review, and he requested that the Board reinstate his paid suspension and stay the hearing until his criminal charges were fully resolved. Tarter responded that the IPS Board was constrained under Ind. Code section 20–6.1–4–11 to hold Raines's hearing within thirty days of Superintendent Pritchett's letter of August 25. The Board therefore could not grant the continuance that Raines requested.

The IPS Board held a hearing on September 24, as scheduled. Raines did not attend, nor did he send a representative or submit a written statement on his own behalf. On September 28 the Board voted to terminate his teaching contract.

## II. Analysis

On appeal Raines argues that the district court erred in finding that Scott Tarter, as legal counsel to the IPS Board, was not subject to suit under 42 U.S.C. § 1983 because he believes that Tarter acted in concert with the board members to wrongfully terminate him. But, as a private attorney, Tarter was not acting "under color of state law" for the purposes of a section 1983 suit when he represented the Board. See Hahn v. Star Bank, et al., 190 F.3d 708, 717 (6th Cir.1999); Fries v. Helsper, 146 F.3d 452, 457–58 (7th Cir. 1998); Hansen v. Ahlgrimm, 520 F.2d 768, 770 (7th Cir.1975). Moreover, Tarter's involvement in the dispute between Raines and the Board was limited to writing two letters on the Board's behalf–one informing Raines that his hearing had been rescheduled from September 20 to September 24, 1999, and the other informing him that the Board had denied his request for a continuance. Tarter had nothing to do with the decision to end Raines's employment with IPS.

Raines also argues that the district court erred in finding that his Title VII discrimination claims were not supported by direct evidence. See Troupe v. The May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir.1994). Direct evidence is evidence that demonstrates discriminatory intent on the part of the employer without requiring a fact-finder to make inferences or presumptions. Lim v. Trustees of Ind. Univ., 297 F.3d 575, 580 (7th Cir.2002). Raines contends that he presented two pieces of direct evidence that the district court ignored.

First, Raines points to a ruling that was entered in his favor following a hearing on his entitlement to unemployment insurance benefits. In that proceeding, the ALJ found that the IPS Board had failed to follow its own procedures and, on

at least one occasion, treated a similarly situated individual more favorably than it had treated Raines. According to Raines, the Board's failure to appeal the ALJ's decision is tantamount to an admission that its members acted improperly, and the Board is collaterally estopped from arguing otherwise. But the Supreme Court has established that state administrative proceedings do not have a preclusive effect in employment discrimination cases brought under Title VII. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 795–96, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (granting preclusive effect to state agency decisions in Title VII actions in federal court would be contrary to Congressional intent); *Pernice v. City of Chicago*, 237 F.3d 783, 787 n. 5 (7th Cir.2001)(same).

Raines's second example of direct evidence–admissions to some of Raines's allegations of discrimination that the IPS Board made in its Answer–is likewise unsuccessful. It is true that the Board inadvertently admitted some of the allegations, i.e., the Board wrote "admit" when it meant to write "deny." But the Board realized its mistake; it sought and was permitted to amend the answer by interlineation. The court acknowledged the Board's inadvertent "admissions" as clerical errors and treated them as such.

Raines next argues that the district court erred in finding that he had not established a *prima facie* case of discrimination under the indirect method of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Raines can establish that, as a Native American, he is a member of a protected class and that he suffered an adverse employment action, thus satisfying the first and third prongs of the *McDonnell Douglas* test. 411 U.S. at 802, 93 S.Ct. 1817; *Lim*, 297 F.3d at 580–81.

■ But Raines cannot meet the other two requirements for a *prima facie* case.

First, he was not meeting the legitimate expectations of his employer that he attend class. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Lim*, 297 F.3d at 580–81. He had been convicted on two counts of battery and two counts of invasion of privacy; he was in jail and could not say for certain when he would be released. Moreover, Raines did not show that the IPS Board treated similarly situated individuals differently. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Lim*, 297 F.3d at 580–81. Raines offered no evidence demonstrating that the Board declined to terminate the contract of a similarly situated non-Native American teacher, *i.e.*, a teacher who, like Raines, had been convicted of several crimes and, as a result, was incarcerated indefinitely. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Lim*, 297 F.3d at 580–81.

■ Raines further submits that the district court erred in finding that his pre-termination hearing complied with procedural due process requirements, even though Raines could not attend the hearing. As a public employee, Raines had a property interest in his continued employment with IPS. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). But the IPS Board provided him with the essentials of due process: notice and an opportunity to respond. *Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir.2002). The Board informed Raines by letter that it would consider the cancellation of his contract at the next board meeting on September 28, 1999, and that a pre-termination hearing would take place on September 24. And though Raines could not be physically present at the hearing, he did have "a chance to tell [his] side of the story." *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 762 (7th Cir.

1999). He could have presented his case in writing or designated a representative to attend the hearing on his behalf, but he did neither.

■ Raines then argues that we should reverse the judgment of the district court because neither the defendants nor the district court gave him adequate notice that he had to submit affidavits to counter the IPS Board's motion for summary judgment. *See Lewis v. Faulkner,* 689 F.2d 100, 102–03 (7th Cir.1982). Because Raines was proceeding *pro se,* the Board was required to include with their summary judgment motion a "short and plain statement of the need to respond with their summary judgment motion, giving both the text of Rule 56(c) and an explanation of the rule in ordinary English." *Timms v. Frank,* 953 F.2d 281, 283, 285 (7th Cir.1992). The IPS Board's *Lewis* notice did include the text of Federal Rule of Civil Procedure 56(c) and informed Raines that in order to survive summary judgment he needed to "show that the School's actions were a mere pretext for discrimination," "that the School's reasons for its actions were lies," and that the School deprived [him] of [his] due process rights. The notice further warned Raines that he needed to file a Response to Statement of Material Facts, any additional evidence and an answer brief within 30 days of service of the motion for summary judgment. This seems sufficient. Raines complains that the Board's "ordinary English" explanation of Rule 56(c) did not specifically mention the importance of sworn affidavits. But he does not specify what affidavits he would have submitted had he received a clearer explanation. As a result Raines does not establish that the Board's *Lewis* notice prejudiced him in any way. *See Timms,* 953 F.2d at 286.

Raines also takes issue with the district court's denial of his motion to consolidate with the present case a separate pending action against the State of Indiana and various state employees seeking relief from their decision to terminate his teaching license. But the district could not have granted Raines's motion even if it wanted to because, although it still had jurisdiction over Raines's teaching license case, it no longer had jurisdiction over the case now before us. Raines filed his notice of appeal in this case on April 29, 2002, the day before he filed his motion to consolidate. Once Raines filed the notice of appeal, the district court was divested of jurisdiction of this case. *See Florian v. Sequa Corp.,* 294 F.3d 828, 829 (7th Cir.2002); *May v. Sheahan,* 226 F.3d 876, 879 (7th Cir.2000).

Finally, Raines argues that the district court should have considered his discrimination claims under Title IX instead of Title VII. But Title IX applies exclusively to sex discrimination claims, *see Boulahanis v. Board of Regents,* 198 F.3d 633, 641 (7th Cir.1999), and addresses discrimination in education not employment, *see Smith v. Metropolitan Sch. Dist. Perry Twp.,* 128 F.3d 1014, 1023 (7th Cir.1997). The district court properly considered Raines's claims under Title VII.

In his appeals brief Raines raises a host of additional issues–the district court erred in granting summary judgment for the IPS Board on his section 1985(3) conspiracy claim, and in concluding that the Board had committed no state-law violations. But Raines does not develop these arguments in any meaningful way, and we therefore decline to address them.

AFFIRMED.