Jackie VANCE, Plaintiff–Appellant,

v.

Howard PETERS, III, Director, Jane. E. Higgins, Warden, and James Roy, Correctional Officer, Defendants–Appellees.

No. 94–3070.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1996.

Decided Oct. 11, 1996.

Rehearing Denied Dec. 18, 1996.

David B. Montgomery (argued), McDermott, Will & Emery, Chicago, IL, for Plaintiff–Appellant.

Patrick L. Breen, William K. Blanchard (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants–Appellees.

Before COFFEY, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Jackie Vance, an inmate at Dwight Correctional Center ("Dwight"), brought suit under 42 U.S.C. § 1983 against three prison officials. She claimed that a prison guard used constitutionally excessive force to restrain her and that two prison officials acted with deliberate indifference to her serious medical needs, in violation of the Eighth Amendment of the Constitution of the United States. The district court granted summary judgment to the two prison officials on the ground that they were not involved directly or personally in the constitutional deprivations alleged in Ms. Vance's complaint. However, the court allowed the excessive force claim against the guard to proceed to trial. Following a two-day trial, the jury returned a verdict for the prison guard. Ms. Vance appeals both rulings. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

A. *Facts*

Jackie Vance is an inmate confined at the Dwight Correctional Center of the Illinois Department of Corrections. She filed her pro se complaint on August 6, 1991, claiming that her civil rights were violated by Howard Peters, the Director of the Illinois Department of Corrections; Jane Higgins, the Warden of Dwight; and James Roy, a correctional officer ("C.O.") at Dwight.[1]

1.

We turn first to the allegations in Ms. Vance's complaint. On the evening of December 27, 1990, Ms. Vance and Violetta Burgos, another inmate of the Mental Health Unit ("MHU") at Dwight, began fighting. C.O. Wilkerson intervened to stop the fight by grabbing Ms. Vance's left arm. Then C.O. Roy (a defendant in this case) grabbed her right arm and twisted it behind her back. Ms. Vance claimed that she "heard a crack and felt a surge of excruciating pain, as I felt my arm pop." R.6 at 3. When she yelled, "You broke my arm!", C.O. Roy replied that he would break her other arm. *Id.* at 3–4. Ms. Vance alleged that, afterwards, several officers kicked and pulled her as they took her back to her room.

Because her right arm continued to hurt, Ms. Vance complained to two officers, but to no avail. Later that evening, she slit her left wrist and was taken to St. Mary's Hospital for treatment. Her left wrist was treated, stated Ms. Vance, but the physician would not examine her right arm; instead, she was given Tylenol for it. When she was returned to Dwight, she was placed in segregation at the MHU.

Ms. Vance further alleged in her complaint that Nurse Pierce visited the MHU on January 7, 1991 to pass out medication. When she saw Ms. Vance's right arm, the nurse commented that the arm looked broken. She gave Ms. Vance some Tylenol and a sling. Two days later, x-rays taken in the prison hospital revealed the fracture. On that same day, Ms. Vance was taken to St. Mary's Hospital for a cast. According to the complaint, the bone specialist said that she would have future problems with that arm. Ms. Vance also noted in her complaint that Officer Roy was suspended for twenty days without pay for his wrongdoing.

1. The court permitted Ms. Vance to amend her complaint to request $20,000 in damages for loss of partial strength in her right arm and for pain, suffering and mental anguish. R.17. The court also appointed an attorney to represent her. R.18.

### 2.

We turn now to the pretrial stage of the litigation in the district court. The court appointed an attorney to represent Ms. Vance. During discovery, depositions were taken and prison and hospital records were examined. When the defendants filed their motion for summary judgment, they submitted portions of Ms. Vance's deposition to justify their claims. That deposition revealed much more information about the fight and the circumstances surrounding Ms. Vance's broken arm.

Ms. Vance testified that Burgos had hit her in the stomach and that Ms. Vance had responded by jumping on her, knocking her down, falling down on top of her and hitting her. Ms. Vance also explained that she weighed 289 pounds and that Burgos weighed much less. When Officer Roy came in, Ms. Vance was "hollering and screaming" that Burgos was at fault for having hit her. R.26 at 42. Officer Roy grabbed her at that point. Ms. Vance tried to get loose when she thought her arm was broken, and she became more and more angry. A number of correctional officers (at least six) tried to return Ms. Vance to her room, but she fought them. She testified that they were pushing and kicking her through the door to her room and that C.O. Roy punched her in the face. Ms. Vance said she spit and swore at Officer Roy. At one point an officer put a handcuff on her left hand, and she "just went haywire" and lost control of her emotions. *Id.* at 59–60. Finally Ms. Vance was put in her room and the door was closed; however, she continued to scream and cry.

Ms. Vance testified that, about ten minutes after "everything happened," she cut her left arm lengthwise with a razor because she was angry and sad and no one would listen to her. Ms. Vance was then taken to the Dwight Clinic; at that point she said she "just wanted to die." *Id.* at 64. Officers Carr and Chavez came into the locked room to talk to her, but Ms. Vance felt that nobody cared about her. So she tried to blow up the oxygen tent in the room by lighting a match. Officer Carr jumped on her back when she struck the match; at some point, Ms. Vance punched Officer Chavez as well. Officer Carr told Ms. Vance that he would get her some help at the hospital.

Ms. Vance was taken to St. Mary's Hospital later that evening to have her cut arm stitched. While at the hospital, she asked for pain medication and was given Tylenol. She testified that her right arm was x-rayed at the hospital. She was returned to the MHU in Dwight afterwards. After that evening, she continued to complain to anyone—guards, nurses and fellow inmates—who came by her room. At first she insisted that she could get no pain medication. However, she also commented that the nurses, who came by twice a day to give her seizure medication and other medicine previously prescribed for her, told her that they could not give her any other medicine without a doctor's order. She also remembered that she had been given a sling because "they say I probably [sprained] it and tore a ligament." *Id.* at 96.

Ms. Vance testified that she did not fill out a referral form to see a doctor about her right arm because she could not write with that hand. Instead, she told every officer and counselor about her pain and enlisted the help of two other inmates who sent letters to Warden Higgins and others, describing Ms. Vance's medical condition and requesting treatment. Ms. Vance further testified that she never talked to Warden Higgins but wrote a letter asking the warden to visit her because her arm was broken. She also wrote a letter to Director Peters because he was Warden Higgins' superior. However, that letter was not written during the period between December 27, 1990 and the time a cast was fitted on her arm.

Finally, on January 7, 1991, when Nurse Pierce went to see Ms. Vance in her cell, she gave Ms. Vance a splint and some pain medication and ordered x-rays for her arm. Two days later the x-rays were taken at St. Mary's Hospital, the fracture discovered, and the arm treated. Ms. Vance's assertion is that, despite repeated requests for medical attention, it was not until thirteen days after Officer Roy broke Ms. Vance's arm that the prison finally provided her with the medical treatment that she obviously needed.

### B. *Proceedings in the District Court*

On June 3, 1993, the district court issued its ruling on defendants' summary judgment

motions. The court noted that defendant C.O. Roy, one of at least six officers who quelled the altercation between the plaintiff and her fellow inmate Burgos, broke the plaintiff's arm. However, it also acknowledged that material facts concerning the circumstances of that injury remained in dispute. The court therefore concluded that, because the intentional and unjustifiable use of force against an inmate constituted cruel and unusual punishment, Ms. Vance's claim against C.O. Roy must proceed to trial to determine whether the force he used was a good faith effort to restore discipline or a malicious effort to cause harm.

With respect to the plaintiff's Eighth Amendment medical mistreatment claim, however, the court set forth the deliberate indifference standard of *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) and *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and granted summary judgment to all three defendants. It noted that Ms. Vance had conceded that C.O. Roy should not be charged with denial or delay of medical treatment. It further determined that the record did not support a cause of action against the other two defendants. According to the court, although the case had reached the summary judgment stage, Ms. Vance had alleged no facts showing that either Director Peters or Warden Higgins was involved directly or personally in any medical deprivation. Nor had the plaintiff shown that treatment was withheld at the direction of or with the knowledge or consent of those defendants. The court concluded that neither official was liable as a supervisor for the acts of others because the doctrine of *respondeat superior* does not apply to actions under 42 U.S.C.

§ 1983. Nor, continued the court, is either official personally liable because Ms. Vance's allegation that Peters and Higgins had failed to respond to her letters notifying them of the lack of medical treatment for her broken arm did not state a § 1983 cause of action.

The defendants undoubtedly receive many such letters every day, and a check would have revealed that the plaintiff already had received attention [albeit apparently unsatisfactory attention] at an outside hospital. Supervisory officials cannot be expected to involve themselves with the "minutiae of daily events in the lives of the thousands of prisoners incarcerated in Illinois prisons."

R.28 at 6 (quoting *Hanna v. Lane*, 610 F.Supp. 32, 36 (N.D.Ill.1985)). Had the officials become involved, the court noted, they would have discovered that Ms. Vance had been treated at a hospital. Expressing regret about the inferior care given to Ms. Vance that evening and about the ten-day delay in follow-up care, the court nevertheless held that there was no basis for liability on the part of the defendants because there was no showing that they were personally involved in the alleged denial of medical treatment. On that basis, the district court granted summary judgment for the defendants on the medical treatment claim and denied summary judgment on the excessive force claim against C.O. Roy.[2]

The case proceeded to trial on Ms. Vance's claim that C.O. Roy used unconstitutionally excessive force against her. After a two-day trial, the jury found for the defendant Officer Roy.

II

DISCUSSION

We begin by considering Ms. Vance's appeal of the summary judgment ruling. We

---

2. The district court did not consider the defendants' affirmative defense of immunity. We too decide the case on the ground that the plaintiff fails on her Eighth Amendment claim, without regard to immunity. *See Dell v. Board of Education*, 32 F.3d 1053, 1066 n. 28 (7th Cir.1994) (listing cases in which § 1983 actions are decided on other grounds without regard to immunity). We note in passing that, when the complaint is read as a whole, it is clear that the claim for damages is brought against the defendants in their individual capacities. *Kentucky v. Graham*,

473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985); *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985); *Yeksigian v. Nappi*, 900 F.2d 101, 103–04 (7th Cir.1990). It is well established, of course, that any claim for damages under 42 U.S.C. § 1983 against state officials in their official capacities must be dismissed as barred by the Eleventh Amendment. *Billman v. Indiana Dep't of Corrections*, 56 F.3d 785, 788 (7th Cir.1995).

review de novo the district court's grant of summary judgment, viewing the record and drawing all reasonable inferences from it in the light most favorable to Ms. Vance, the nonmoving party. *Wade v. Byles,* 83 F.3d 902, 904 (7th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 311, — L.Ed.2d —— (1996). We shall affirm a summary judgment if the pleadings, depositions and affidavits show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Stratmeyer v. United States,* 67 F.3d 1340, 1345 (7th Cir.1995). The moving party has the burden of establishing an absence of a genuine issue of material fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). However, the party opposing the motion for summary judgment may not rest on the allegations in her pleadings; she must come forward with evidence of a genuine factual dispute. *Id.* A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmovant, Ms. Vance. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11; *see Smith v. Shawnee Library Sys.,* 60 F.3d 317, 320 (7th Cir.1995).

### A.

Ms. Vance first submits on appeal that material issues of fact, precluding summary judgment, exist. She claims that the denial of medical treatment for thirteen days to a prisoner with a broken arm is objectively cruel and unusual treatment. She points out that defendants Warden Higgins and Director Peters have not denied knowledge of Ms. Vance's serious medical condition and of her failure to receive appropriate attention. She further asserts that there is a material issue of fact concerning the intent of Peters and Higgins, who were made aware of her condition through letters written by herself and two other inmates and yet failed to provide her medical treatment. Ms. Vance's position is that the officials' failure to act, once they had knowledge, suggests that those officials desired the prisoner to suffer harm.

### B.

When considering whether the defendants are subject to § 1983 liability, we follow our long-settled rule: "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1248 (7th Cir.1994) (citing *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983)), *cert. denied,* — U.S. ——, 115 S.Ct. 937, 130 L.Ed.2d 882 (1995).

The constitutional deprivation alleged in this case is an Eighth Amendment violation. The Eighth Amendment to the Constitution of the United States proscribes the infliction of "cruel and unusual punishments." The amendment imposes upon prison officials the duty to "provide humane conditions of confinement," *Farmer v. Brennan,* 511 U.S. 825, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994), including the obligation to provide medical care to those whom it has incarcerated, *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976). A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1977. As the Court explained in *Farmer,* "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unneces-

sary and wanton infliction of pain.' "). In *Farmer*, the Supreme Court refined the *Estelle* and *Hudson* definitions of "deliberate indifference." The Court cast aside the objective test of negligence and adopted, instead, the standard of "subjective recklessness" used in the criminal law:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at ——, 114 S.Ct. at 1979. However, the Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id.* at ——, 114 S.Ct. at 1981.

Our circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. They also recognize that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

"Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health—that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.' "

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.) (quoting *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir.1994) (quoting, in turn, *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1979)), *cert. denied*, —— U.S. ——, 116 S.Ct. 527, 133 L.Ed.2d 434 (1995); *see also Steele v. Choi*, 82 F.3d 175, 179 (7th Cir.1996) (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*), *cert. denied*, —— U.S. ——, 117 S.Ct. 244, —— L.Ed.2d —— (1996); *Miller v. Neathery*, 52 F.3d 634, 638–39 (7th Cir.1995) (applying *Farmer* mandate in jury instruction). However, a plaintiff inmate need not prove that a defendant *intended* the harm that ultimately transpired or *believed* the harm would occur. *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir.1996).

### C.

With these principles of law in mind, we now examine Ms. Vance's allegation that the named defendants violated her rights under the Eighth Amendment by the delay of thirteen days in setting her broken arm. The focus must be on whether any of the defendants had the personal involvement necessary to permit a finding of liability.

At the outset, we emphasize that Ms. Vance has chosen to bring this action against only three defendants, none of whom was involved directly in the treatment of her injury. With respect to Officer Roy, Ms. Vance conceded in the district court that he had no responsibility for her medical care. She makes no argument on this matter before us. The other two defendants, Director Peters and Warden Higgins, were not directly involved in the procurement of her medical care. As we have noted previously, a supervising prison official cannot incur § 1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right. *Gentry v. Duckworth*,

65 F.3d 555, 561 (7th Cir.1995); *Sheik–Abdi,* 37 F.3d at 1248; *see also Jones v. Chicago,* 856 F.2d 985, 992 (7th Cir.1988) (noting that "supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable"). The test for establishing personal responsibility was set forth in *Gentry*:

> Of course, [the defendant prison official] cannot be personally liable under a theory of respondeat superior. However, " '[a]n official satisfies the personal responsibility requirement of section 1983 ... if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.' " That is, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...." In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery.

*Gentry,* 65 F.3d at 561 (citations omitted). In *Gentry,* the inmate claimed that his right of access to the courts was violated because he was denied scribe materials. He sent the superintendent many letters concerning his claims; they went unanswered. This court determined, upon examination of the pleadings in that particular case, that it was a reasonable construction of the inmate's pled facts to conclude that the superintendent knew of the denial of scribe materials because of the prisoner's "many letters" to him, and that, as a matter of policy, the superintendent had ignored these requests for redress. *Id.*

*Gentry* thus allows the possibility that an inmate's letters to prison administrators may establish a basis for § 1983 liability. However, we do not read *Gentry* as establishing an ironclad rule that any prisoner communication to a prison official anywhere in the corrections hierarchy constitutes adequate notice to the official of a violation of the Eighth Amendment. The plaintiff still has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to "an excessive risk to inmate health or safety," *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1979. Once the official knows of that risk, the refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.

We now turn to an application of these principles in the case before us. We begin with Ms. Vance's complaint. It makes no allegation concerning Higgins and Peters: no claim of personal involvement on their part, of any connection by them to the lack of medical attention, or of any notice by Ms. Vance or others of the lack of treatment. The district court, however, did not ground its decision in the failing of Ms. Vance's complaint to raise any allegation against Higgins or Peters. Instead, it proceeded to evaluate the substance of Ms. Vance's claim on summary judgment. We therefore shall extend the same leniency to this pro se complaint and evaluate Ms. Vance's complaint on the same basis as did the district court. *Antonelli v. Sheahan,* 81 F.3d 1422, 1428 (7th Cir.1996) (stating that pro se complaints are interpreted less stringently). However, even when we read her complaint and summary judgment responses generously and in the light most favorable to her, Ms. Vance has not presented sufficient evidence of the involvement of these prison officials in the delay in Ms. Vance's treatment. Her claim of their personal liability under § 1983 is based solely on the letters she and two inmates sent and the nonresponse by Peters and Higgins.

The district court concluded that the officials' failure to respond to her letters simply did not state a § 1983 cause of action. It commented that the officials "cannot be expected to involve themselves with the 'minutiae of daily events in the lives of the thousands of prisoners incarcerated in Illinois prisons.' " R.28 at 6 (quoting *Hanna v. Lane,* 610 F.Supp. 32, 36 (N.D.Ill.1985)). After *Gentry,* it is clear that the district court's statement sweeps too broadly. As we have noted earlier, a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition. *See*

*Antonelli,* 81 F.3d at 1428. Ms. Vance thus needed to offer some record evidence that, because of the purported letters, the defendant officials knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated. *Gentry,* 65 F.3d at 561.

When we examine the record upon summary judgment in its entirety, it becomes clear that Ms. Vance has not carried her burden of demonstrating that there is a genuine issue of triable fact with respect to the knowledge of either of these officials. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11 (stating that the party opposing the motion for summary judgment is required to present evidence of a genuine issue of material fact, not mere allegations, and that the evidence must be sufficient for a jury to return a verdict in that party's favor).

At her deposition, Ms. Vance testified that she did not fill out a prison request form asking for medical treatment because her arm was broken and she could not write. She also stated that she had informed correctional officers with whom she had contact during that period that she needed medical assistance. With respect to the named defendants, she stated that she wrote to the warden and asked her to see her because she had a broken arm. She also had two other inmates write on her behalf. She further asserts that, when the warden realized that she had one of the other inmates write for her, she was moved to isolation. With respect to Director Peters, Ms. Vance testified that she wrote to him. However, she also testified that neither she nor anyone on her behalf communicated with him during the period between her injury and January 9 when she was given a splint.

With respect to Warden Higgins, her submission is both vague and internally inconsistent. She claims to have written to the warden but also claims that, during the same period, she was unable to use her arm to fill

out a routine request for medical attention.[3] More importantly, she does not supply, in her description of the purported letter, any detail to permit the conclusion that the letter sufficiently advised the warden of the situation to require her intervention.

The lapses in her own testimony are not cured by other evidentiary submissions. There is no corroborative evidence with respect to the letters that Ms. Vance says that she sent to the defendant officials. She had no copy of a letter and no letter was produced from any other source. One of the prisoners who allegedly wrote on her behalf, Tammy Fyke, gave a deposition; however, Ms. Vance's counsel never asked her whether she wrote such a letter. Tammy Evans, the other inmate who was named by Ms. Vance, never gave a deposition. No letter was produced. The warden was not deposed. Under these circumstances, we cannot say that there is sufficient evidence to permit a jury to determine that the warden was sufficiently alerted of a lapse in Ms. Vance's treatment as to require her intervention or further investigation. With respect to Director Peters, Ms. Vance's admission that neither she nor any one else wrote during that period on her behalf bars any relief on her behalf.

On the basis of the evidence in the summary judgment record, we must conclude that Ms. Vance did not meet her burden of establishing that the prison officials named as defendants were sufficiently informed of the situation to require their intervention. Accordingly, we hold that the district court properly ruled that the three defendants were entitled to summary judgment.

### D.

The second issue Ms. Vance appeals concerns an evidentiary ruling made by the district court in the trial of the excessive force allegation against C.O. Roy. She contends that the district court abused its discretion by refusing to admit an exhibit she had prof-

---

**3.** We note that Ms. Vance did not utilize any available prison grievance procedure against Peters or Higgins. However, she did institute a proceeding against C.O. Roy; thus she knew the proper procedure to follow. We need not decide in this case whether a prisoner's personal com-

munication to a prison official that circumvents the use of an established and effective grievance procedure is sufficient to put the prison official on notice of a prisoner's complaint with respect to conditions that ought to be reported through the grievance system.

fered. The exhibit in question was the memorandum to Warden Higgins from the Employee Review Officer in the Illinois Department of Corrections. That officer had conducted a hearing concerning Officer Roy's conduct in the incident that resulted in Ms. Vance's broken arm. The hearing officer had concluded that Officer Roy had used excessive force on Ms. Vance and had recommended a twenty-day suspension. The memorandum was signed by the warden, indicating her agreement with the hearing officer's conclusion.

The district court ruled that the exhibit was admissible under Rule 803(6) of the Federal Rules of Evidence, as a "record of a regularly conducted activity," but it excluded the document under Rule 403 because it was cumulative and because the probative value was outweighed by its prejudicial effect. The court already had admitted the documents that had been considered by the hearing officer: the interviews, hospital and clinic records and other information collected by prison investigators, and the investigators' reports and conclusions that C.O. Roy used excessive force. In deciding not to admit the report, the court expressed concern that the jury would "give inordinate weight to the conclusion or the decision reached by the hearing officer," and that the chance of prejudice therefore outweighed the probative value of the submission. R.56 at 184.

Ms. Vance claims that the report would have demonstrated to the jury that the force C.O. Roy used on Ms. Vance was excessive by the prison's own standards. She also asserts that the exhibit was not cumulative because her other exhibits did not indicate Warden Higgins' concurrence in the findings of excessive force.

We review a trial court's rulings concerning admissibility of evidence only for an abuse of that court's discretion. *United States v. Thomas*, 86 F.3d 647, 652 (7th Cir.1996); *United States v. Wiman*, 77 F.3d 981, 984 (7th Cir.1996).

> With respect to Rule 403 determinations, we have noted that the district court, "who saw and heard the evidence firsthand, can best balance probity and prejudice." Thus, the defendants bear a heavy burden in challenging the trial court's decision to admit evidence under Rule 403.

*Thomas*, 86 F.3d at 652.

We believe that the district court exercised sound judgment in its ruling. There is no basis for reversal. The court's earlier decision to admit the evidence that had been considered by the hearing officer permitted the jury to weigh on its own the available evidence. The exclusion of the hearing officer's final report ensured that the jury reached its own conclusion with respect to the ultimate issue without giving inordinate weight to that officer's conclusion. The hearing officer's decision that C.O. Roy used excessive force was based on the standards set forth in the prison's internal rules or policies, not on Eighth Amendment criteria. *See, e.g., McGill v. Duckworth*, 944 F.2d 344, 350 (7th Cir.1991) (noting distinction between an officer's violation of a prison rule and of an Eighth Amendment requirement), *cert. denied*, 503 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992).

### Conclusion

For the reasons presented above, we affirm the judgment of the district court.

AFFIRMED.