Scott R. GILCHRIST, Plaintiff,

v.

KANE COUNTY CORRECTIONAL
CENTER & Kenneth Ramsey,
Defendants.

No. 297 C 3478.

United States District Court,
N.D. Illinois,
Eastern Division.

May 4, 1999.

**810**

Scott R. Gilchrist, Aurora, IL, pro se.

Robert P. Vogt, Weldon—Linne & Vogt, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Sheriff Kenneth Ramsey's motion for summary judgment. For the following reasons, the court grants defendant's motion.

### I. BACKGROUND

Plaintiff Scott Gilchrist ("Gilchrist") is a former inmate of the Kane County Correctional Center ("the KCCC"). Defendant Sheriff Kenneth Ramsey ("Sheriff Ramsey") is the Sheriff of Kane County and, by statute, is the Warden of the KCCC. Gilchrist has brought this suit against Sheriff Ramsey [1] in both his personal and official capacity pursuant to 42 U.S.C. § 1983, claiming that prison officials at the KCCC acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment of the Constitution of the United States. The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

---

1. Gilchrist also sued the KCCC. On March 12, 1998, the court dismissed the KCCC as a defendant because it is a non-suable entity.

## A. *Uncontested facts*[2]

Every inmate who enters the KCCC is screened for tuberculosis ("TB") via a skin test. If an inmate's skin test is positive for TB, the inmate is provided with appropriate medical care, including a chest x-ray and INH and B6 therapy. Inmates who test positive for active TB are segregated from the general population of the KCCC and are provided with appropriate medical treatment. All TB screening, testing and treatment is provided by nurses and doctors.

In late July of 1995, Gilchrist was arrested and placed in custody at the KCCC. As an incoming inmate, Gilchrist was given a TB skin test. The results of the TB skin test were negative for the TB germ.

On September 15, 1995, an inmate with active TB ("the infected inmate") was discovered to be residing in Gilchrist's cell block. The KCCC medical staff removed the infected inmate from Gilchrist's cell block. Later that same day, Gilchrist and all other inmates in Gilchrist's cell block were administered a second TB skin test. The second TB test performed on Gilchrist was positive, which means that Gilchrist had been exposed to the TB germ.

On September 20, 1995, Gilchrist underwent a chest x-ray in order to determine whether Gilchrist had active TB. Gilchrist's chest x-ray was normal and showed no evidence of active TB. Due to the positive skin test, however, Gilchrist was provided INH and vitamin B6 therapy for six months in order to prevent the possibility of Gilchrist contracting active TB. During the six-month therapy, Gilchrist was transferred to the Illinois Department of Corrections ("the IDOC") and within a week was placed at the Sheridan Correctional Center. The IDOC continued to administer the INH and vitamin B6 therapy to Gilchrist for the remainder of the six-month period.

Gilchrist has never contracted active TB and has never suffered from coughing, abnormal weight loss, fever, night sweats, or fatigue. Other than the infected inmate, Gilchrist does not know of any other inmate with active TB who was housed in the KCCC's general population for any period of time.

Gilchrist's claim against Sheriff Ramsey is based on Gilchrist's belief that one of Sheriff Ramsey's subordinates allowed an inmate with active TB to be released into the KCCC's general population. Gilchrist sued Sheriff Ramsey because Gilchrist believes that Sheriff Ramsey should be responsible in this case because he is the "main man" and is "top in the hierarchy" at the KCCC. Gilchrist, however, has no knowledge, information, or evidence which suggests that Sheriff Ramsey knew that an inmate with active TB was released into the general population. In support of his motion for summary judgment, Sheriff Ramsey submitted an affidavit. In his affidavit, Sheriff Ramsey states that he (1) did not know of any incoming inmate being released into the general population without undergoing a TB skin test; (2) did not know of any infected inmate being released into the general population of the KCCC; (3) did not know of any inmate being allowed to remain in the general population after it became known that the inmate suffered from active TB; (4) did not know of any inmate ever not being given appropriate medical treatment when his skin test was positive for TB; and (5) has never had a policy permitting inmates with active TB to be released into the KCCC's general population.

## B. *Procedural history*

Gilchrist filed this suit on May 8, 1997. On November 5, 1998, Sheriff Ramsey filed his motion for summary judgment, along with his supporting memorandum of law and his statement of uncontested facts. On December 8, 1998, Gilchrist filed a

2. The following undisputed facts are taken from defendant's 12(M) Statement. *See* II.B

(addressing Gilchrist's failure to comply with Local General Rule 12).

"responsive pleading" in which Gilchrist (1) complained that Sheriff Ramsey had not complied with Gilchrist's discovery requests and (2) recited the factual allegations contained in his complaint.

In response to Gilchrist's response, Sheriff Ramsey filed a motion to amend the briefing schedule, requesting that the briefing schedule be amended to allow Sheriff Ramsey time to supply Gilchrist with whatever discovery he had requested. The court issued an amended briefing schedule, which required Gilchrist to file a new response to Sheriff Ramsey's motion for summary judgment by January 29, 1999.

On January 29, 1999, Gilchrist filed a motion for extension of time to respond. The court granted Gilchrist's motion and gave Gilchrist until March 9, 1999 to file the response. On March 29, 1999, having received no response from Gilchrist, the court warned Gilchrist of the consequences of his failure to respond to a motion for summary judgment. *See Timms v. Frank,* 953 F.2d 281, 285 (7th Cir.1992). The court gave Gilchrist until April 19, 1999 to file a response which complied with Federal Rule of Civil Procedure 56 and Local General Rule 12.

As of today, the court has still not received a new response or any further communication from Gilchrist. Accordingly, the court will rule on Sheriff Ramsey's motion without the benefit of Gilchrist's new response.

## II. *DISCUSSION*

### A. *Local General Rule 12*

Before addressing the merits of Sheriff Ramsey's motion for summary judgment, the court must address Gilchrist's failure to comply with Local General Rule 12 ("Rule 12"). Rule 12(M) requires the party moving for summary judgment to file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judg-

ment as a matter of law." LOCAL GEN.R. 12(M). The required statement is to consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.* Rule 12(N) then requires the opposing party to file, among other items,

> a concise response to the movant's statement that shall contain: (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the records, and other supporting materials relied upon, and (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

LOCAL GEN.R. 12(N)(3). Rule 12(N) further provides that "[a]ll material facts set forth in the statement of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Id.* The Seventh Circuit has upheld strict compliance with Rule 12 on numerous occasions. *Huff v. UARCO Inc.,* 122 F.3d 374, 382 (7th Cir.1997).

In this case, Sheriff Ramsey filed a proper Rule 12(M) statement. Gilchrist has submitted nothing even remotely close to a Rule 12(N) statement. In fact, Gilchrist has submitted no evidence at all, even though he was warned of the consequences of his failure to do so. Accordingly, the facts contained in Sheriff Ramsey's Rule 12(M) statement are deemed admitted to the extent that those facts are supported by the record.

### B. *Standard for deciding a motion for summary judgment*

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir. 1995).

The burden is on the moving party to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in his pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989).

## C. *Gilchrist's § 1983 claim against Sheriff Ramsey in his individual capacity*

Gilchrist has sued Sheriff Ramsey in his individual capacity. Sheriff Ramsey has moved for summary judgment on this claim, arguing that he cannot be held personally liable under § 1983 because he was not personally involved in the alleged constitutional deprivation that Gilchrist claims he suffered.

■ A defendant in a § 1983 action cannot be held liable under a theory of *respondeat superior. Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995); *Kernats v. O'Sullivan,* 35 F.3d 1171, 1182 (7th Cir.1994). Rather, to recover damages under § 1983, the plaintiff must show that the defendant was personally responsible for the deprivation of a constitutional right. *Gentry,* 65 F.3d at 561 (citing *Jones*

*v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988)). A defendant is personally responsible for the alleged constitutional deprivation when the defendant "'acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.'" *Black v. Lane,* 22 F.3d 1395, 1401 (7th Cir.1994) (quoting *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985)). In other words, the defendant "'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.'" *Gentry,* 65 F.3d at 561 (quoting *Jones,* 856 F.2d at 992). "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Id.*

■ Gilchrist's claim against Sheriff Ramsey is based on Gilchrist's belief that one of Sheriff Ramsey's subordinates allowed an inmate with active TB to be released into the KCCC's general population. Gilchrist, however, has submitted no evidence which shows that Sheriff Ramsey in any way was personally involved in the release of the inmate with active TB into the general population. Gilchrist has no knowledge or information to suggest, and that there is no other evidence, that Sheriff Ramsey knew that an inmate with active TB was placed into the general population. In his uncontroverted affidavit, Sheriff Ramsey states that he (1) did not know of any incoming inmate being released into the general population without undergoing a TB skin test; (2) did not know of any infected inmate being released into the general population of the KCCC; (3) did not know of any inmate being allowed to remain in the general population after it became known that the inmate suffered from active TB; (4) did not know of any inmate ever not being given appropriate medical treatment when his skin test was positive for TB; and (5) has never had a policy permitting inmates with active TB to be released into the

KCCC's general population. Thus, there is simply no evidence in this case that Sheriff Ramsey knew that an inmate with active TB was placed into the general population or that he directed, facilitated, approved, condoned, or turned a blind eye to such conduct.

In his deposition, Gilchrist stated that he sued Sheriff Ramsey because he "is personally and officially responsible for his subordinates" and is the "main man" and "top in the hierarchy" at the KCCC. However, as previously mentioned, personal liability cannot be based on a theory of *respondeat superior*; the defendant must have been personally involved in the constitutional deprivation. Liability of a prison warden also cannot be based on the "[t]he general responsibility of a warden for supervising the operations of a prison" or "the isolated failure of his subordinates to carry out prison policies ... unless the subordinates are acting (or failing to act) on the warden's instructions." *Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir.1998) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).

In sum, Gilchrist has failed to submit evidence showing that Sheriff Ramsey was personally responsible for the alleged constitutional deprivation. There is no affirmative link between the action complained about and Sheriff Ramsey other than the undisputed evidence that Sheriff Ramsey was charged with the administration of the KCCC and responsible for all persons at the KCCC. This is not sufficient personal involvement for the imposition of § 1983 liability. *See Black*, 22 F.3d at 1401 n. 8. Accordingly, the court grants Sheriff Ramsey's motion for summary judgment with respect to Gilchrist's claim against Sheriff Ramsey in his individual capacity.

### D. *Gilchrist's § 1983 claim against Sheriff Ramsey in his official capacity*

Gilchrist has also sued Sheriff Ramsey in his official capacity. Sheriff Ramsey has moved for summary judgment on this claim, arguing that there is no evidence that the alleged constitutional deprivation was caused by an official policy, practice or custom.

■ A § 1983 action against an official in his official capacity is treated as a suit against the governmental entity that employs the defendant. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 382 (7th Cir.1988) ("An official-capacity suit is not against the official as an individual; the real party in interest is the entity."). Thus, Gilchrist's suit against Sheriff Ramsey in his official capacity is actually a suit against Kane County.

■■ It is well settled that a § 1983 claim against a municipality cannot be based on a theory of *respondeat superior.* *Monell*, 436 U.S. at 691, 98 S.Ct. 2018; *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986). Municipalities cannot be held liable for damages under § 1983 unless a governmental policy or custom caused the alleged constitutional violation. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. A plaintiff may establish the existence of an official policy or custom (1) by proving the existence of an express municipal policy that caused the alleged constitutional deprivation, *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734 (7th Cir.1994); (2) by establishing that the person who committed the constitutional tort was an official with policy-making authority, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); or (3) by establishing the existence of a practice or custom so widespread or persistent that it rises to the level of a policy which can fairly be attributed to the municipality, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

In his amended complaint, Gilchrist alleges that "[d]efendant(s) had a custom, practice, and policy of placing inmates with active TB in general population instead of segregating them which is mandated by

Illinois law." (Am.Compl. ¶ 12.) Gilchrist has submitted no evidence whatsoever in support of this allegation.

In contrast, Sheriff Ramsey has submitted uncontroverted evidence that there was no such policy or custom at the KCCC and that the KCCC had proper TB control procedures in place that were being followed. First, in his uncontroverted affidavit, Sheriff Ramsey stated as follows:

2.... All incoming inmates of Kane County Adult Corrections Center (hereinafter, "KCACC") are screened for tuberculosis (TB) via a skin test. Inmates who test positively for the TB germ are offered appropriate medical care including chest x-rays and INH and B6 therapy. Inmates who test positively for active TB are segregated from the general population of the KCACC and are provided with appropriate medical treatment.

3. I have no knowledge of any inmate being released into the general population of the KCACC in contravention of the policy outlined above. I also have no knowledge of any inmate being allowed to remain in the general population of the KCACC after it became known that the inmate suffered from active TB.

4. I do not now have, nor have I ever had, a policy permitting inmates with active TB to be released into the general population of the KCACC.

(Ramsey Aff. ¶¶ 2–4.) In addition, Gilchrist testified at his deposition that (1) all incoming inmates, including himself, were tested for TB via a skin test and (2) if an incoming inmate tested positive for TB, the inmate was placed into segregation. (Gilchrist Dep. at 52.) Gilchrist also admitted that he did not know of any other inmate, besides the one infected inmate in his cell block, who had active TB and who was kept among the general population. (*Id.* at 22.)

■ Based on the above, the court finds that Gilchrist has failed to establish that the alleged constitutional deprivation was caused by an official policy or custom. The undisputed evidence is that (1) the KCCC has a policy pursuant to which it screens each incoming inmate for TB, gives appropriate medical care to those inmates who test positive, and places into segregation those inmates with active TB and (2) Sheriff Ramsey has never had a policy permitting inmates with active TB to be released into the general population. The evidence in this case that one inmate with active TB somehow managed to be released into the general population is insufficient to establish a policy or custom. *See City of Okla. City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *see also Steidl,* 151 F.3d at 741. Accordingly, the court grants Sheriff Ramsey's motion for summary judgment with respect to Gilchrist's claim against Sheriff Ramsey in his official capacity.

### E. *Gilchrist's claim of deliberate indifference to his serious medical needs*

■ Sheriff Ramsey argues that even if the court found that Sheriff Ramsey could be held liable under § 1983, Gilchrist has nonetheless failed to prove that Sheriff Ramsey acted with "deliberate indifference" to Gilchrist's serious medical needs. The court agrees.

■ It is well settled that "deliberate indifference to the serious medical needs of prisoners" violates the Eighth Amendment. *Forbes v. Edgar,* 112 F.3d 262, 265 (7th Cir.1997). In order to establish a deliberate indifference claim, the plaintiff must show that (1) the deprivation was sufficiently serious and (2) the defendant acted with "deliberate indifference." *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir.1996). To establish that a defendant acted with deliberate indifference, the plaintiff must prove that the named defendant knew that inmates face a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811

**816**

(1994). This is a subjective, not objective, test. *Vance,* 97 F.3d at 991–92. This means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. A defendant's inadvertent error, gross negligence, or even ordinary medical malpractice is insufficient to rise to the level of an Eighth Amendment violation. *Id.* at 992; *Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir.1996).

In this case, there is no evidence that Sheriff Ramsey acted with deliberate indifference. The undisputed evidence is that (1) all incoming inmates were tested for TB; (2) those who tested positive for TB exposure were offered appropriate medical care including a chest x-ray and INH and B6 therapy; (3) those who tested positive for active TB were segregated from the general population and provided with appropriate medical care; (4) Sheriff Ramsey has no knowledge of any inmate being released in the general population without being tested for TB; (5) Sheriff Ramsey has no knowledge of, and has never had a policy permitting, any inmate with active TB being released in the general population; and (6) Sheriff Ramsey has no knowledge of any inmate not being given appropriate medical treatment after testing positive for TB. Further, it is undisputed that once it was learned that an inmate with active TB was in the general population, prison officials removed that inmate, retested the rest of the inmates, and provided appropriate medical care to those inmates who tested positive for TB. It is true that one inmate with active TB was somehow released into the general population; however, that is insufficient to establish liability under the Eighth Amendment. *See Forbes,* 112 F.3d at 267. Thus, Gilchrist has failed to carry his burden to show that Sheriff Ramsey acted with deliberate indifference.

### III. *CONCLUSION*

For the foregoing reasons, the court grants defendant Sheriff Kenneth Ramsey's motion for summary judgment. Accordingly, the court enters final judgment in this case in favor of defendant Sheriff Kenneth Ramsey and against plaintiff Scott Gilchrist. Plaintiff is advised that if he wishes to appeal this final judgment, he must file a notice of appeal within 30 days of entry of judgment. FED.R.APP.P. 4(a).