NOTICE
Decision filed 06/28/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210118-U

NO. 5-21-0118

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| SAMMY J. MOORE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 15-MR-116 |
| | ) | |
| LANA KNUPP, RITA WALTER, BARBARA | ) | |
| ELLNER, RICHARD HARRINGTON, ALEX | ) | |
| JONES, ROBERT SHEARING, MICHAEL | ) | |
| MOLDENHAUER, and WEXFORD HEALTH | ) | |
| SOURCES, INC., | ) | Honorable |
| | ) | Eugene E. Gross, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's dismissal of plaintiff's complaint with prejudice is affirmed where, despite two amendments, plaintiff's complaint failed to state a cause of action, and the circuit court did not abuse its discretion in refusing to reinstate two defendants and dismissing a third for want of prosecution with prejudice.

¶ 2    Plaintiff, Sammy J. Moore, appeals the Randolph County circuit court's dismissal of his second amended complaint for multifariousness and dismissal of defendants Robert Shearing, Michael Moldenhauer, and Wexford Health Sources, Inc., for want of prosecution. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4    On September 2, 2015, Moore, a prisoner at Lawrence Correctional Center, filed an application to sue as an indigent person. The same day, the circuit court issued an order granting Moore's application requiring Moore to pay a filing fee of $4.35 within 60 days. Following an additional extension, Moore's filing fee was received, and his complaint was filed.

¶ 5    Moore's two-count complaint was brought against Lana Knupp, Rita Walter, Barbara Ellner, Richard Harrington, Alex Jones, Robert Shearing, and Michael Moldenhauer, in their individual capacities, based on their employment or performance of employment at Menard Correctional Center (Menard). Count I, brought against all seven defendants, claimed deliberate indifference in violation of Moore's eighth and fourteenth amendment rights, as well as common law negligence. The count was based on Moore's alleged inability to obtain migraine medication, as well as the excessive heat in his cell, from August 7, 2013, to August 29, 2013, while temporarily housed at the Menard facility.

¶ 6    Regarding the medication, Moore alleged that (1) Knupp, a "med tech," performed his original intake at Menard and would not provide him with the migraine medication he brought from Western Illinois Correctional Center (WICC); (2) Moore filed a request for his medication and was seen by a nurse who referred him to be seen "on an emergency basis" by a physician; (3) emergency referrals require a physician to evaluate the prisoner within 24-48 hours; (4) Walter, a Menard employee who scheduled medical appointments, scheduled Moore's appointment with Dr. Shearing six days later on August 16, 2013; (5) Dr. Shearing canceled the appointment and thereafter Ellner, another Menard employee who schedules medical appointments, set up an appointment with Moldenhauer, a nurse practitioner, for August 22, 2013; (6) this appointment was later rescheduled to August 26, 2013, at which time Moore was seen and issued a new

2

prescription for his migraine medications; and (7) and Moore received his medication on August 29, 2013.

¶ 7    Moore's allegations regarding the heat in his cell claimed that (1) upon arrival to Menard, Moore was assigned to a 6-by-10 cell and prohibited from leaving the cell except to go to court; (2) the cell had a heat index from the low 90s to the low 100s 19-20 hours a day; (3) the lack of air circulation aggravated the heat, his migraines and blood pressure; (4) Jones, the assistant warden, and Harrington, the warden, were required to ensure all cell houses were regularly inspected to ensure the living conditions were safe and sanitary; (5) the lack of air and heat would be easily acknowledged during an inspection; (6) no inspection was ever performed; and (7) these conditions, along with the denial of his medications, deprived Moore of an opportunity to treat or prevent his migraine pain.

¶ 8    Count II, brought against Harrington and Jones, alleged constitutional and equal protection violations related to Moore's decreased privileges at Menard due to an alleged institutional rule that classified temporary prisoners as "security risks." Moore alleged that as a temporary prisoner at Menard, he had fewer privileges than when he was permanently housed at WICC and fewer privileges than permanently housed prisoners, in either the general population or segregation, at Menard. Attached to the complaint were various documents including Moore's medical records, a prescription for his medications, his grievance filed with the prison, and the denial of said grievance.

¶ 9    Summons were issued on January 11, 2016. On January 19, 2016, Shearing's summons was returned because he no longer worked for Wexford Health Sources, Inc. (Wexford).[1] The

_____

[1]According to Moore's complaint, Wexford is the corporation contracted to provide medical personnel to prisoners housed in Illinois Department of Corrections (IDOC) facilities.

correspondence further stated that Shearing's address would be provided under separate cover, but no such correspondence is contained in the record. Moore was advised of the return on February 1, 2016, and was provided a copy of the January 19, 2016, correspondence as well as a new summons directed to Shearing that left the address blank for Moore to complete. On March 23, 2016, Moore sent correspondence requesting the status of service for all defendants except Shearing. He also moved for the issuance of a subpoena directed to IDOC and/or Wexford, to compel them to provide the court with Shearing's last known address. On March 28, 2016, the circuit court sent a copy of the February 1, 2016, correspondence with a copy of summons in response to Moore's motion.

¶ 10    On April 18, 2016, defendants Knupp, Walter, Ellner, Harrington, and Jones, represented by the attorney general, filed a motion to dismiss and memorandum of law in support thereof pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). The motion contended that Moore's complaint failed to state a claim upon which relief could be granted or, in the alternative, violated the equitable doctrine of multifariousness. The memorandum more specifically contended that Moore's complaint failed to allege facts to support each element of his claims of deliberate indifference for each defendant and further failed to plead sufficient facts to state a claim for equal protection or cruel and unusual punishment. The memorandum also contended that Moore's complaint misjoined unrelated claims. The trial court issued a docket entry order providing Moore 45 days to respond to the motion to dismiss and sent a copy of the docket entry to Moore.

¶ 11    On June 9, 2016, Moore moved to stay the proceedings until Shearing was served and the status of Moldenhauer's service was clarified. In response, the circuit court issued a docket entry on June 9, 2016, granting Moore's motion, which stated, "No action to be taken until all defendants

4

are served or until further order of the Court." A copy of the docket entry was mailed to the parties the same day.

¶ 12    On November 14, 2016, Moore sent correspondence to the clerk requesting a copy of the docket sheet to determine the status of service on Shearing and Moldenhauer. A copy of the docket sheet was mailed to Moore the following day. On December 15, 2016, Moore sent correspondence to the clerk with the address of the Shearing and Moldenhauer's employer, Wexford, requesting summons be issued to the defendants using Wexford's address. In a docket entry dated the same day, the circuit court directed the clerk to issue alias summons to both and stated, "Plaintiff is responsible for perfecting service on non-state employees." The summons directed to the two defendants were issued and mailed to Moore on December 20, 2016. On January 9, 2017, Moore sent correspondence requesting clarification of the court's message regarding service perfection. On January 18, 2017, the clerk sent correspondence to Moore acknowledging his leave to proceed as a poor person and the lack of court fees, stating that the "designation does not mean that it becomes the clerk's duty to serve the process. You should take the appropriate steps as required by law to have each defendant properly served."

¶ 13    On February 10, 2017, Moore filed a motion for leave to request waiver of service pursuant to section 2-213 of the Code (735 ILCS 5/2-213 (West 2016)) or, in the alternative, a new summons due to the expiration of the previously issued summons. On February 15, 2017, the circuit court issued a docket entry stating that a motion was not necessary, and that plaintiff must make a request for waiver of service directly to the defendants. A copy of the court's docket entry was mailed to Moore on February 17, 2017. On March 2, 2017, Moore requested new summons directed to Shearing and Moldenhauer. The circuit court ordered the issuance of alias summons as requested by Moore the same day, and the summons were issued and mailed to Moore on March 3, 2017.

¶ 14  On June 12, 2017, the Allegheny County sheriff's department issued an affidavit of service stating that Joe Ebbitt, the director of risk management at Wexford, refused service on behalf of defendant Shearing. On July 3, 2017, Moore filed a motion for issuance of subpoena directing Joe Ebbitt to provide a specific reason for his refusal to accept service. Alternatively, Moore moved for a substitution of defendants, requesting Shearing and Moldenhauer "be replaced with Wexford as being the defendant," clarifying the request to state "that Wexford be substituted as the sole defendants for the two named defendants." The court reviewed the file and, in a docket entry, noted Shearing no longer worked for Wexford. The court directed the issuance of alias summons on Moore's request but stated Moore must provide an address for Shearing and the clerk was not responsible for locating the defendant. The court further denied Moore's request to subpoena Joe Ebbitt but granted leave to Moore to amend his complaint to include additional defendants. A copy of the docket entry was mailed to Moore on July 6, 2017.

¶ 15  On August 21, 2017, Moore filed an amended complaint with the same claims and defendants except that Moore substituted Wexford for Shearing and Moldenhauer. The circuit court noted Wexford had not been served and directed the clerk to issue summons for Wexford at Moore's request. The court also stated the order to stay the proceedings was to remain in effect until Wexford was served. A copy of the docket entry and a request to issue summons were mailed to Moore on August 24, 2017.

¶ 16  On October 2, 2017, Moore requested summons be issued to Wexford. The clerk sent correspondence to Moore on October 4, 2017, noting a missing page in the amended complaint, and stating that summons would issue upon receipt of the full complaint. On October 23, 2017, Moore sent correspondence to the clerk regarding the missing page. The document further stated, "If you refer to my initial complaint you will see that Wexford is not identified as a defendant.

They are however identified as such in the amended complaint where they/it replaced defendant N.P. Moldenhauer and Dr. Shearing." On October 26, 2017, summons was issued to Wexford and mailed to Moore with a copy of the amended complaint to facilitate service.

¶ 17    On December 22, 2017, Moore filed a motion for waiver of service fee after he received correspondence from the Allegheny sheriff's department requiring payment of $85 or a waiver from the circuit court. On December 27, 2017, the circuit court issued a docket entry stating that Moore's request was granted when he granted leave to proceed *in forma pauperis*, but if a separate order was required for out of state process, Moore needed to submit a proposed order. A copy of the docket entry was mailed to Moore the same day.

¶ 18    On February 5, 2018, Moore moved for issuance of the order and provided a proposed order, which was signed by the circuit court four days later and sent to Moore. On June 8, 2018, Moore sent correspondence to the clerk requesting a status report regarding Wexford's summons. On June 14, 2018, the circuit court issued a docket entry stating an alias summons could issue on request. A copy of the docket entry was sent to Moore on June 19, 2018. On July 5, 2018, Moore requested an alias summons for Wexford. A blank summons was mailed to Moore the following day with directions to fill it out and return it to the clerk. Upon receipt, the clerk issued the summons on July 25, 2018, and returned it to Moore to perfect service. On October 18, 2018, Moore sent correspondence to the clerk requesting a status update on service to Wexford. A copy of the record sheet was sent to Moore on October 24, 2018.

¶ 19    On February 15, 2019, Moore requested a status report. The circuit court entered a docket entry on February 20, 2019, noting that Moore was correct in stating the court file did not reflect service on Wexford and that an alias summons could issue anytime on Moore's request. A copy of the entry was mailed the following day. On April 5, 2019, Moore requested the issuance of

summons to Wexford. The circuit court entered a docket entry on April 8, 2019, directing the clerk to issue an alias summons, with an additional copy of the complaint, to Moore, both of which were sent on April 10, 2019.

¶ 20    On July 31, 2019, Moore renewed his motion for use of waiver of service, this time on defendant Wexford. On August 12, 2019, the circuit court issued a docket entry stating, "This Court is without authority to modify the rules regarding service of process and, therefore, Plaintiff's request for use of a 'waiver' is DENIED. An alias may issue on Plaintiff's request." A copy of the docket entry was mailed to Moore on August 14, 2019. On September 13, 2019, Moore sent correspondence to the clerk requesting the issuance of the alias summons. In response, an alias summons, along with another copy of the waiver of service fee order, was mailed to Moore.

¶ 21    On October 1, 2019, the attorney general filed an updated notice of appearance and set the pending motion to dismiss for hearing on October 21, 2019. Following the hearing, the circuit court stated an alias summons was to issue on request and set the matter for judicial review in 90 days. The court reviewed the file on January 23, 2020, and April 23, 2020, entered docket entries noting that no service had been made, and forwarded copies of the docket entries to the parties.

¶ 22    On July 10, 2020, the circuit court issued an order granting the attorney general's 2-615 motion to dismiss as it related to defendants Knupp, Walter, Ellner, Harrington, and Jones. The order also dismissed Moore's claim against Wexford for want of prosecution in that service was never made and the last alias issued was September 18, 2019.

¶ 23    On July 24, 2020, Moore filed a motion for reconsideration. On July 29, 2020, the circuit court issued an order denying Moore's motion, noting that Moore was correct about the stay, but four years had elapsed since Moore requested the stay and the court *sua sponte* lifted the stay by entering the July 10, 2020, order for the purpose of docket management. The court further noted

that the motion to dismiss was pending for over four years, no summons was issued or requested since September 18, 2019, and Moore was aware that a summons was only valid for 30 days. The order allowed Moore to file an amended complaint within 30 days and stated Moore could seek reinstatement of Wexford upon good cause shown.

¶ 24    On August 7, 2020, Moore filed a second amended complaint with essentially the same claims against the same defendants in the first amended complaint but also included Moldenhauer and Shearing as defendants. Moore also filed a petition for reinstatement of defendant Wexford.

¶ 25    On August 10, 2020, Moore requested the issuance of summons for defendants Wexford, Shearing, and Moldenhauer. The same day, the circuit court issued an order granting Moore's motion to reinstate Wexford, stating an alias summons could be issued at the direction of Moore, and directing Moore to use due diligence in perfecting service on Wexford. The order also stated that Shearing and Moldenhauer had never been served and the claims against them remained dismissed for want of prosecution. Summons for Wexford was sent, along with a copy of the amended complaint, to Moore on August 13, 2020.

¶ 26    On September 2, 2020, Moore moved to reinstate defendants Shearing and Moldenhauer or issue a subpoena to the attorney general's office to provide an address for the defendants. The circuit court denied Moore's request the same day.

¶ 27    On October 5, 2020, the attorney general filed a motion to dismiss defendants Knupp, Walter, Ellner, Harrington, and Jones pursuant to section 2-615 based on a failure to state a claim or, alternatively, multifariousness. The attorney general also filed a memorandum of law in support of the motion providing the particulars related to the two motions. On October 7, 2020, the circuit court ordered Moore to respond to the motion to dismiss within 45 days. On November 30, 2020, Moore requested an additional 45 days to respond to the motion to dismiss. The circuit court

9

granted Moore's motion. On February 26, 2021, the circuit court issued an order granting the motion to dismiss with prejudice after noting that Moore was granted the opportunity to respond but failed to do so.

¶ 28     On March 23, 2021, Moore filed a motion for leave to file a late response to the motion to dismiss *instanter*. Moore's response contended that defendant's motion to dismiss was based on their own interpretation of the facts. Moore also contended that he pled sufficient facts to support his claims against the defendants, and he did not misjoin his claims.

¶ 29     On March 24, 2021, the circuit court issued an order granting Moore's motion for leave to file his response *instanter*. The order also found the motion to dismiss was "well taken," noting that Moore "combined completely separate causes of action into a single complaint." The court found that, "[w]hile the allegations concerning delays in receipt of migraine medication may be sufficiently plead [*sic*] to survive a 2-615 motion, the allegations are combined with a much more expansive theory of conditions of confinement." Thereafter, the circuit court granted the motion to dismiss. The order noted that the matter had been pending for over five years and, despite twice amending the pleadings, the defects were not cured and therefore granted the dismissal "with prejudice." The order also found that Wexford was previously dismissed for want of prosecution on July 10, 2020, reinstated at Moore's request on August 10, 2020, and alias summons was issued on August 13, 2020. Despite directing Moore to use due diligence in securing service, the court found no record of service. The order dismissed Wexford for want of prosecution and dismissed all litigants with prejudice.

¶ 30     On April 1, 2021, Moore filed a motion for default judgment that alleged Wexford was served on September 8, 2020. An unfiled notice of appeal also appears in the record. On April 5, 2021, the circuit court issued a docket entry stating "[a]ll claims were dismissed by an Order

10

entered on 3-24-21. Plaintiff now alleges that Defendant Wexford was served on September 8, 2020; however, the court file does not contain a return of service." On April 27, 2021, Moore filed proof of service on Wexford with a second motion for entry of default and another notice of appeal. On April 28, 2021, the trial court issued an order noting Moore's filings and finding Moore's notice of appeal divested the court of jurisdiction.

¶ 31                                   ANALYSIS

¶ 32    On appeal, Moore argues that the circuit court abused its discretion when it dismissed defendants Moldenhauer, Shearing, and Wexford for want of prosecution with prejudice. Moore also argues that his condition of confinement claim was properly joined in the same complaint with his deliberate indifference claim and that the circuit court committed error by dismissing his complaint on the grounds of misjoinder, with prejudice, pursuant to section 2-615 (735 ILCS 5/2-615 (West 2016)).

¶ 33                      Dismissal for Want of Prosecution

¶ 34    Moore appeals the trial court's dismissal for want of prosecution of defendants Moldenhauer, Shearing, and Wexford. We note however, that while the trial court found on August 10, 2020, that Shearing and Moldenhauer remained "dismissed for want of prosecution," the record is devoid of any order dismissing either defendant on such basis. Regardless, the procedural history undermines any possibility of including Shearing and Moldenhauer as defendants in Moore's second amended complaint.

¶ 35    Shearing and Moldenhauer were named as defendants in Moore's September 2, 2015,[2] complaint but were removed as defendants when Moore filed his first amended complaint on

---

[2]Papers filed with an application to sue as an indigent person are deemed filed on the date the application is presented. 735 ILCS 5/5-105(e) (West 2016).

August 21, 2017. The record reveals that Moore chose to "substitute" Wexford for defendants Shearing and Moldenhauer as evidenced by Moore's July 3, 2017, pleading and October 23, 2017, correspondence. Thereafter, Moore again named Shearing and Moldenhauer as defendants in his second amended complaint filed on August 7, 2020. Moore's attempt to revive Shearing and Moldenhauer as defendants in 2020 after his removal of the defendants in 2017 is most akin with a voluntarily dismissal, pursuant to section 2-1009 of the Code (735 ILCS 5/2-1009 (West 2016)). Here, the period for revival of claims against either defendant long expired prior to August 7, 2020. See *id.* § 13-217. As such, neither Shearing nor Moldenhauer could be named as defendants in Moore's second amended complaint and the trial court properly denied Moore's request to reinstate them.

¶ 36    As such, we need only address Moore's claim that the trial court's dismissal for want of prosecution against Wexford was in error. A trial court's finding that there was "a lack of diligent prosecution warranting dismissal rests with the sound discretion of the trial court and should not be disturbed upon appeal" unless an abuse of discretion is found. *In re Marriage of Hanlon*, 83 Ill. App. 3d 629, 632 (1980). A circuit court abuses its discretion "where no reasonable person would take the view adopted by the trial court." *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003).

¶ 37    Dismissals for want of prosecution are governed by Illinois Supreme Court Rule 103(b) (eff. July 1, 2007). Rule 103(b) states, *inter alia*:

"If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations,

12

the dismissal shall be with prejudice as to that defendant \*\*\*." Ill. S. Ct. R. 103(b) (eff. July 1, 2007).

¶ 38    Numerous factors are considered when determining whether plaintiff exercised reasonable diligence: (1) defendant's actual notice or knowledge of the pendency of a suit, (2) the lack of prejudice to the defendant, (3) the length of time used to effect service, (4) plaintiff's activities, (5) plaintiff's knowledge of defendant's location, (6) the ease with which defendant's whereabouts could be ascertained, (7) special circumstances that affected plaintiff's efforts, and (8) actual service on the defendant. *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371, 377 (1990). These factors are considered "with a view toward fulfilling the constitutional mandate of rendering justice fairly and promptly." *Id.* (citing *Muskat v. Sternberg*, 122 Ill. 2d 41, 49 (1988)).

¶ 39    Here, there is no evidence regarding the first two factors, which are "significant" but "will not necessarily preclude a dismissal under Rule 103(b)." *Id.* With regard to factors three, four, five, six, and eight, the record reveals that over three years elapsed before Moore served Wexford on September 8, 2020, despite Moore having Wexford's address eight months prior to Moore naming Wexford as a defendant on August 21, 2017. With regard to factor seven, we also consider Moore's incarceration.

¶ 40    The record reveals that plaintiff was well aware that any summons issued was only viable for 30 days, yet Moore's diligence in following up on service only occurred two or three times each year during the three years when service was not effective. The record also reveals that Wexford was initially dismissed for want of prosecution on July 10, 2020, and when the trial court reinstated Wexford and summons was issued on August 10, 2020, Moore was admonished to use due diligence in serving Wexford. Despite the admonishment, the court record contained no evidence that Wexford was served in the seven months following Wexford's reinstatement. It was

13

not until after the trial court dismissed Wexford for a second time, on March 24, 2021, that Moore ever submitted proof of service to the court.[3] Given the amount of time that elapsed without evidence of service, we cannot find that the trial court's dismissal for want of prosecution was an abuse of discretion.

¶ 41 We also consider the trial court's dismissal with prejudice. Moore's complaint alleged injury stemming from Wexford's alleged inactions from August 7, 2013, to August 29, 2013. The statute of limitations for a civil action alleging a deprivation of "any rights, privileges, or immunities secured by the Constitution" pursuant to 42 U.S.C. § 1983 (1994) or common law negligence is two years following the date of injury. *Lucien v. Jockisch*, 133 F.3d 464, 466 (7th Cir. 1998); 735 ILCS 5/13-202 (West 2016). Moore's complaint was filed on September 2, 2015. 735 ILCS 5/5-105(e) (West 2014).[4] Based on the allegations contained within the complaint, as well as the filing date of the original complaint, Moore's "failure to exercise reasonable diligence to obtain service" on Wexford occurred after the expiration of the applicable statute of limitations. Therefore, the trial court's dismissal for want of prosecution was required to be with prejudice. Ill. S. Ct. R. 103(b) (eff. July 1, 2007).

¶ 42                                   Motion to Dismiss

¶ 43 Moore also contends that the trial court's dismissal pursuant to section 2-615 after finding that Moore "combined completely separate causes of action into a single complaint" was in error.

---

[3]While Moore's April 27, 2021, motion revealed that Wexford was served on September 8, 2020, there is nothing in the motion that contended the documents attached to the motion were undiscovered or unobtainable prior to March 24, 2021. See 735 ILCS 5/2-1203 (West 2020); *Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 24 (2009).

[4]While most prisoner pleadings are considered filed when placed in the prison mail (*People v. Liner*, 2015 IL App (3d) 140167, ¶ 13), the filing of a new action requires physical possession by the clerk. *People v. Floyd*, 210 Ill. App. 3d 840, 843 (1991). However, even if the new action did not require possession, no affidavit of service for either Moore's application to sue as an indigent person or his complaint was included with either pleading that might alter the filing date. Ill. S. Ct. R. 12(b)(3) (eff. July 1, 2007).

14

"Multifariousness is found where distinct and independent matters are joined which require separate briefs and defenses, and the joinder of claims against two or more defendants." *Jaffke v. Anderson*, 162 Ill. App. 3d 290, 293 (1987). While a recognizable legal issue, "Illinois courts have generally followed the rule that dismissal of the complaint for misjoinder of parties or claims is improper." *Opal v. Material Service Corp.*, 9 Ill. App. 2d 433, 444 (1956) (citing *Hitchcock v. Reynolds*, 278 Ill. App. 559 (1935); *People for Use of Pope County v. Shetler*, 318 Ill. App. 279 (1943); *People for Use of Jones v. Leviton*, 327 Ill. App. 309 (1945)).

¶ 44 Continued reliance on the general rule is further supported by statute, which prohibits dismissal for misjoinder of parties (735 ILCS 5/2-407 (West 2020)) and fails to provide dismissal as a remedy for misjoinder of claims (*id.* §§ 2-614(b), 2-1006). As such, we find the circuit court's dismissal for misjoinder of claims erroneous.

¶ 45 Despite the error, we "may *** affirm the lower court on any basis in the record, regardless of whether the trial court considered that basis or whether its decision is actually supported by the bases it did consider." *Moody v. Federal Express Corp.*, 368 Ill. App. 3d 838, 841 (2006) (citing *Bell v. Louisville & Nashville R.R. Co.*, 106 Ill. 2d 135, 148 (1985)). "A motion to dismiss filed pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)) attacks the legal sufficiency of a complaint; its purpose is to raise defects apparent on the face of the pleadings." *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 14. "In order to state a cause of action, a complaint must set forth a legally recognized cause of action and plead facts bringing the claim within that cause of action." *Misselhorn v. Doyle*, 257 Ill. App. 3d 983, 985 (1984). "Dismissal of the complaint is mandatory if one fails to meet both requirements." *Id.* (citing *People ex rel. Fahner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 308 (1981)).

¶ 46 When reviewing a circuit court's dismissal pursuant to section 2-615, "[w]e accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). However, the plaintiff "may not rely on mere conclusions of law or fact unsupported by specific factual allegations" to state a cause of action. *Id*. The complaint must set forth a legally and factually sufficient cause of action. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). A complaint should only be dismissed under section 2-615 if it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *In re Estate of Powell*, 2014 IL 115997, ¶ 12. We review *de novo* an order granting a section 2-615 motion to dismiss. *Biffar*, 2014 IL App (5th) 130543, ¶ 14.

¶ 47 As such we consider the claims erroneously combined in count I (see 735 ILCS 5/2-603 (West 2016)) that included (1) a claim of deliberate indifference in violation of the eighth amendment against Knupp, Walter, and Ellner;[5] (2) a claim of common law negligence against the same three defendants; and (3) a condition of confinement claim (as a deliberate indifference claim) against Jones and Harrington. We start with Moore's claim of deliberate indifference against Knupp, Walter, and Ellner.

¶ 48 "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.' " *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The *Estelle* standard of "deliberate indifference to serious medical needs" requires both a subjective and an objective component. *Id.* (citing *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). "In the medical care context, the objective element requires that the

___

[5]Because defendants Shearing, Moldenhauer, and Wexford were properly dismissed, we need not address Moore's claims against these defendants.

inmate's medical need be sufficiently serious." *Id.* (citing *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996)). "The subjective element requires that the officials act with a 'sufficiently culpable state of mind.' " *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Considering both elements, the Supreme Court held

> "that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

¶ 49    We note that an objectively serious condition includes an ailment that was "diagnosed by a physician as mandating treatment." (Internal quotation marks omitted.) *Gutierrez*, 111 F.3d at 1373. Moore alleged that defendant Knupp was aware of his previously diagnosed condition of migraines. Moore also alleged that Walter "was made aware that plaintiff was in need of his prescription migraine meds" and Ellner "was aware that plaintiff needed to see a physician to receive his medications." While vague, we believe that all three allegations were sufficient to meet the objective element.

¶ 50    As to the subjective component, Moore's complaint must allege that each prison official was deliberately indifferent to Moore's medical condition. With regard to Knupp, Moore alleged that Knupp denied him possession of the medications he brought with him from WICC; however, nothing in Moore's complaint alleged that Knupp, as a "med tech," had the authority recognized in Illinois to issue any medication to Moore. As to Walter and Ellner, Moore alleged that both defendants scheduled Moore for appointments six days after Moore received the referral; however, there is no allegation as to when either defendant received the referral or when either defendant

17

actually scheduled the appointment. Nor does the exhibit upon which Moore relies contain any of this information. Moore fails to allege that either appointment could have been scheduled for an earlier date or that an opening was available prior to the scheduled appointment. We also note that both "call passes" issued by the defendants clearly stated that the appointment was a "priority" or must be honored, controverting any inference of "deliberate indifference" given Moore's allegation that his referral was on an "emergency basis." Here, we find that Moore's scant allegations were insufficient to support a claim of deliberate indifference, and his exhibits controverted such a finding, as they confirmed both defendants performed their jobs by scheduling the appointments and specifically included language on the passes to ensure no delay occurred.

¶ 51 Finally, we also note that to "show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties v. Carter*, 836 F.3d 722, 730-31 (7th Cir. 2016) (*en banc*) (citing *William v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007)). Here, no corroborating evidence is found. As such, we find that Moore's claim of deliberate indifference against Knupp, Walter, and Ellner failed to state a claim and was properly dismissed pursuant to section 2-615 of the Code.

¶ 52 Moore also contends that count I alleged claims of common law negligence against these same three defendants. "To properly state a cause of action in negligence, a plaintiff must establish the following elements: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injuries." *Cosgrove v. Commonwealth Edison Co*., 315 Ill. App. 3d 651, 654 (2000).

¶ 53 Here, plaintiff's complaint does not even mention the word "duty" with regard to any of these defendants, say nothing of any defendant's breach of said duty. Nor can we decipher any

specific duty required, or a breach of any specific duty by, any of these defendants based on the facts alleged. Moore alleged that Knupp was a "med tech," who provided "prisoner at said facility medical attention" and that Walter and Ellner's jobs involved scheduling medical appointments. By Moore's own admissions, medical attention was rendered, and the medical appointments were scheduled. As noted above, there were no allegations that Knupp was authorized to distribute medications or allegations stating when Walter or Ellner received the referrals or that a medical professional was available within the time period allegedly required by the alleged protocols. "Lacking a threshold allegation of the existence of a duty, allegations that certain acts or omissions are negligent are conclusory and are insufficient to state a cause of action for negligence." *McLean v. Rockford Country Club*, 352 Ill. App. 3d 229, 233 (2004). Here, plaintiff failed to allege sufficient facts to support a duty, or breach of a duty, by any of the defendants. As plaintiff failed to allege the elements of a common law cause of action for negligence, dismissal of this claim pursuant to section 2-615 is also proper.

¶ 54 Moore also brought a deliberate indifference claim regarding the conditions of his confinement against Jones and Harrington based on the alleged excess heat in his cell. We note, however, that "[t]he Constitution *** does not mandate comfortable prisons." (Internal quotation marks omitted.) *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "Inmates cannot expect the amenities, conveniences and services of a good hotel"; the society they once abused is only obliged to provide constitutionally adequate confinement." *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988).

¶ 55 To establish a violation of the eighth amendment's prohibition against cruel and unusual punishment, the plaintiff must establish both a serious deprivation of a basic human need and deliberate indifference of the prison condition by the prison official. *Jackson v. County of Kane*,

19

399 Ill. App. 3d 451, 455 (2010). "The first showing requires the court to determine whether the deprivation of the basic human need was objectively 'sufficiently serious,' and the second requires it to determine whether subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " *Id.* (citing *Wilson*, 501 U.S. at 298). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Id.*

¶ 56    Here, Moore's complaint stems from being housed at Menard in a cell where the heat index "was anywhere from the high 90's to the low 100's 19-20 [hours] a day" due to a lack of air circulation. However, with regard to Jones and Harrington's knowledge of the condition, once again, Moore's allegations contradict a finding that either official had knowledge of the alleged condition because Moore's complaint also alleged that no inspection of his cell house was ever performed while he was housed at Menard. As such, we find that Moore's deliberate indifference to a condition of confinement claim cannot stand and was properly dismissed.

¶ 57    Finally, Moore contends that count II of his complaint raised due process, equal protection, and cruel and unusual punishment claims against Jones and Harrington due to a reduction in privileges while temporarily housed at Menard. More specifically, Moore contends that he was deprived of any opportunity to exercise or recreate in the prison yard, not allowed to mingle with the general population, allowed fewer weekly telephone calls, and had reduced showers than permanently housed prisoners at Menard. He further claimed these privileges were a reduction from his permanent housing at WICC. Moore claimed that he received the reduction in privileges because all temporarily transferred prisoners were automatically deemed a security threat at

20

Menard and said classification was made without a legitimate penological interest to justify said classification.

¶ 58    With regard to Moore's claim of cruel and unusual punishment, only deprivations of basic human needs such as food, medical care, sanitation, and physical safety trigger eighth amendment violations. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). None of Moore's confinement claims fall into any of these categories, and therefore, Moore's allegations are insufficient to qualify as an eighth amendment violation.

¶ 59    As to Moore's equal protection claims, "[p]rison classifications are presumed to be rational and will be upheld if any justification for them can be conceived." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016). "[P]rison administrators may treat inmates differently as long as the unequal treatment is rationally related to a legitimate penological interest." *Id*. In fact, "[a] prison regulation, even one that impinges on an inmate's constitutional right, is valid if it is reasonably related to a legitimate penological interest." *People ex rel. Department of Corrections v. Fort*, 352 Ill. App. 3d 309, 314 (2004) (citing *Turner v. Safley*, 482 U.S. 78, 87 (1987)). Well-established legitimate penological interests include " 'preservation of life, prevention of suicide, and the enforcement of prison security, order, and discipline.' " *Id*. (quoting *People ex rel. Department of Corrections v. Millard*, 335 Ill. App. 3d 1066, 1072 (2003)).

¶ 60    To state a valid equal protection claim, Moore must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (Internal quotation marks omitted.) *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601 (2008). A threshold matter for any equal protection claim requires a determination of whether the individual claiming an equal protection violation is similarly situated to the comparison group. *People v. Masterson*, 2011 IL 110072, ¶ 25. An equal protection

21

challenge fails if no showing is made. *Id*. Just because individuals share some common traits does not mean they are similarly situated. *People v. Warren*, 173 Ill. 2d 348, 363 (1996). "[F]or equal protection purposes, a determination that individuals are similarly situated cannot be made in the abstract." *Id*. "Typically, in the context of equal protection claims, a determination that individuals are similarly situated requires an analysis of the purpose of the legislation at issue." *Masterson*, 2011 IL 110072, ¶ 25. Here, Moore's complaint provides no citation to, or the language contained within, the alleged policy or institutional rule at issue but states the policy "automaticall[y] deemed all prisoners sent to Menard on a court writ a security threat." Based on this allegation, the purpose of the alleged rule involves prison security.

¶ 61 Here, Moore's complaint alleges he was treated differently than permanently housed prisoners at Menard or permanently housed prisoners at WICC. However, nothing in Moore's complaint alleges that he was a permanently housed prisoner at Menard when he was housed at that facility. Instead, Moore alleges that he was transferred to Menard "on a temporary basis" due to a court writ. As such, Moore's own allegations defeat any finding of similarly situated persons as there is no claim that permanently housed and temporarily housed prisoners are similarly situated. Further, even if the groups could be classified as similarly situated, "the enforcement of prison security" is a well-established penological interest (*Turner*, 482 U.S. at 87), and therefore, by Moore's own admission, there is a rational basis for the difference in treatment. As such, we find that Moore's second amended complaint failed to state the proper elements for an equal protection claim and was therefore properly dismissed.

¶ 62 We also consider Moore's due process claim. In order to make out a valid due process claim, plaintiff must establish three prerequisite elements: (1) the existence of a protected life, liberty, or property interest; (2) a deprivation of that protected interest; and (3) state action

22

effecting the deprivation of the protected interest. See *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). We interpret Moore's allegations to contend that the alleged prison regulation that required temporarily housed prisoners to be housed differently than permanently housed prisoners at Menard is unconstitutional.

¶ 63 Moore's complaint, however, fails to provide a citation to, or the specific language of, any specific regulation that would allow for consideration of Moore's allegations. "An advisory opinion results if the court resolves a question of law which is not presented by the facts of the case." *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 408 (1990). "This court cannot pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events." *Stokes v. Pekin Insurance Co.*, 298 Ill. App. 3d 278, 281 (1998). Here, we have only Moore's interpretation of an alleged and uncited regulation or policy. Without the actual language of the regulation, we find that addressing Moore's alleged interpretation would result in an advisory opinion. As such, we find that Moore's due process claim in count II is fatally flawed and was properly dismissed. Given these findings, as well as those set forth above, we affirm the dismissal of Moore's second amended complaint against defendants Knupp, Walter, Ellner, Jones, and Harrington for failure to state a cause of action pursuant to section 2-615 of the Code.

¶ 64                                    Dismissal With Prejudice

¶ 65 Finally, Moore contends that the trial court erroneously dismissed his complaint with prejudice. In determining whether it is appropriate to allow a plaintiff the opportunity to amend the complaint, the court must consider whether (1) the proposed amendment would cure the defective pleading, (2) the other parties would be prejudiced or surprised by the proposed amended complaint, (3) the plaintiff had previous opportunities to amend the complaint, and (4) the proposed amendment is timely. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263,

23

273 (1992). We review the court's decision to dismiss a complaint with prejudice for an abuse of discretion. *Crull v. Sriratana*, 388 Ill. App. 3d 1036, 1046 (2009).

¶ 66 Here, the circuit court noted that the matter had been pending for over five years, and despite twice amending the pleadings, the defects were not cured. While the circuit court's dismissal was based on the misjoinder of claims, it is not lost that the attorney general's main argument in both motions to dismiss was based on Moore's failure to state a claim for the theories presented. Despite the attorney general's memorandum of law specifically stating what allegations were missing for the alleged claims, at no time did Moore ever amend his complaint to address the alleged deficiencies. Instead, Moore argued that his claims were sufficiently pled and never requested leave to file an amended complaint to replead his claims.

¶ 67 "An abuse of discretion standard is highly deferential to the circuit court." *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 23. A circuit court abuses its discretion "where no reasonable person would take the view adopted by the trial court." *Dawdy*, 207 Ill. 2d at 177. Given the length of time the case was pending, the amendments previously filed, Moore's adamance that his pleadings were properly pled, and his lack of any request to file an amended petition after the case was dismissed, we cannot say the circuit court abused its discretion in ordering Moore's complaint dismissed with prejudice and affirm the order.

¶ 68                                          III. CONCLUSION

¶ 69 For the reasons stated herein, we affirm the circuit court's dismissal of Moore's complaint against Knupp, Ellner, Walter, Harrington, and Jones, with prejudice, as well as the trial court's denial of Moore's request to reinstate defendants Shearing and Moldenhauer and dismissal for want of prosecution with prejudice of defendant Wexford.

24

¶ 70    Affirmed.